**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHASE RAY STRIKE,<br><br>Defendant. | **Case No.** CR 10-06-BLG-RFC<br><br><br>**ORDER** |

**BACKGROUND**

On October 1, 2008, Montana Probation and Parole Officer Kelly Nash conducted a probation and parole search on Defendant's residence located at 1613 Roadrunner Place. Officer Nash was assisted by Probation and Parole Officers Chris Evans, Caddice Reinschmidt and Pinnick. Officer Nash reported that she had received "three separate tips that Mr. Strike was engag[ed] in suspicious drug related activities and that he had been seen brandishing a weapon." Officers Evans and Reinschmidt noted in their respective reports that the basis, as relayed to them by Officer Nash, was "threatening others and carrying weapons." Defendant's landlord had also relayed numerous complaints he had been receiving from other

-1-

tenants regarding Defendant's conduct.  The complaints involved violent behavior and drug distribution.

Upon arriving at the residence, a female, later identified as Loreena Fae McShane, answered the door.  Officers Nash and Evans requested McShane advise Defendant to come to the door.  McShane complied with the request and Defendant came to the door, where he was immediately handcuffed and directed to the living room.  McShane, Whitney Bittner and the owner of the residence, Nick Kojetin, were also detained in the living room.

Officer Nash searched Defendant's bedroom and, after finding nothing, directed Defendant to provide his key chain to search the 1998 black Cadillac registered and owned by Nick Kojetin.  Defendant did not own the 1998 black Cadillac but it was listed on his September, 2008 monthly Probation and Parole report, in response to the question: "List all vehicles at your residence, even if you don't own them."  Officer Nash had also seen Defendant driving the 1998 Cadillac to his check-in appointments and this was the vehicle Defendant was known to drive.

Defendant provided his keychain to Nash, but it did not include a key to the 1998 Cadillac.  Defendant and Nash went back to the living room.  Shortly thereafter, Officer Pinnick returned downstairs with the keys to the 1998 Cadillac;

he reported the keys were found on the night stand in Defendant's bedroom, laying on Defendant's ID. Officer Nash noted that none of the other occupants, including the supposed owner of the car, Nick Kojetin, had keys to the Cadillac.

Officer Nash searched the 1998 Cadillac. In the course of the search, Nash discovered a large plastic bag with dried mushrooms in the front console. In the back seat, in a fold-up middle console, Officer Nash located six bags of Ecstasy pills with Playboy Bunny insignia. Also located inside the vehicle were miscellaneous papers belonging to Defendant, including an oil change service order with Defendant's information, a blank Probation and Parole Monthly Report, and a business card for Defendant's contact with Alternatives for the Breathalyser Program.

## ANALYSIS

Defendant argues that Officer Nash did not have reasonable suspicion to search his residence and vehicle. The government responds that Officer Nash's reasonable suspicion was derived from information provided by reputable sources, including law enforcement and Defendant's landlord, that Defendant had been engaged in unlawful conduct involving threats, firearms and drugs.

A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be "reasonable." *Griffin v. Wisconsin*, 483

U.S. 868, 878 (1987).  A state's special need for supervision as part of a probation system to ensure compliance by probationers may justify the need for state regulations that permit warrantless searches on reasonable ground.  *Id.* at 875-80.

The "totality of the circumstances" must be examined to determine whether a search is reasonable under the Fourth Amendment.  *United States v. Knights*, 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497.  Reasonableness "is determined by assessing, on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."  *Id.*, at 118-119, 122 S.Ct. 587. Applying this approach in *Knights*, the Court found reasonable the warrantless search of a probationer's apartment based on reasonable suspicion and a probation condition authorized by California law.  In evaluating the degree of intrusion into Knights' privacy, the Court found his probationary status "salient," *id.*, at 118, 122 S.Ct. 587, observing that probation is on a continuum of possible punishments and that probationers "do not enjoy 'the absolute liberty' " of other citizens, *id.*, at 119, 122 S.Ct. 587.  The Court also found probation searches necessary to promote legitimate governmental interests of integrating probationers back into the community, combating recidivism, and protecting potential victims.  *Id.* at 588.

-4-

Defendant was on parole with the State of Montana at the time of the search at issue. Both parolees and probationers "are on the 'continuum' of state-imposed punishments," *Samson v. California*, 547 U.S. 843, 850 (2006), and parolees "have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.*

Defendant's conditions of parole included searches and stated as follows:

> **SEARCH OF PERSON OR PROPERTY**: Upon reasonable suspicion, as ascertained by the Probation & Parole Officer, my person, vehicle, and/or residence may be searched at any time, day or night, without a warrant by a Probation/Parole Officer, ISP Officer or a Law Enforcement Officer (at the direction of the Probation/Parole/ISP Officer). I may also be searched at my place of employment. Any illegal property or contraband will be seized and may be destroyed.

In this case, Officer Nash was acting, in part, upon several complaints from neighbors that Defendant was engaged in illegal activity, including use of a firearm, which is a direct violation of Defendant's parole. One concerned neighbor attempted to videotape what was believed to be suspected drug activity. Officer Nash acted appropriately based upon the information, complaints and concerns provided by reputable members of the community.

Furthermore, Officer Nash made a rational determination that Defendant was driving the black Cadillac. The key for the black Cadillac was located in

Defendant's bedroom, with Defendant's ID.  Defendant had driven the black Cadillac to check-in appointments.  Officer Nash had been told Defendant was the sole operator of the black Cadillac and it was the only vehicle listed in Defendant's *Monthly Report*.  This was all confirmed when Officer Nash located personal documents belonging to Defendant inside the Cadillac.

Based upon the foregoing, Officer Nash had reasonable suspicion to conduct a search of Defendant's property and the Motion to Suppress is **DENIED**.

DATED this 2nd day of August, 2010.

*/s/Richard F. Cebull*_____
RICHARD CEBULL
U.S. DISTRICT COURT